*United States Bankruptcy Court*
*District of New Jersey*
*Clarkson S. Fisher Federal Building*
*United States Courthouse*
*402 East State Street*
*Trenton, New Jersey 08608*

*Hon. Kathryn C. Ferguson*                                                                 *(609) 858-9351*

## LETTER OPINION

April 19, 2023

Thaddeus R. Maciag, Esquire
Maciag Law, LLC
475 Wall Street
Princeton, NJ 08540

Andrea Dobin, Esquire
Joseph R Zapata, Jr., Esquire
McManimon Scotland & Baumann, LLC
427 Riverview Plaza
Trenton, NJ 08611

Carol L. Knowlton, Esquire
Gorski and Knowlton PC
311 Whitehorse Avenue - Ste A
Hamilton, NJ 08610

      Re:    Michael Adam Morris
              Case No. 22-15977

              Vermont Highland Cattle Company, LLC Motion for Relief
              from Stay and Confirmation Hearing of Joint Proposed Chapter 12
              First Modified Plan - Hearing Date: 4/13/2023

Dear Counsel:

      On April 11, 2023, this court heard three matters in the Michael Morris case: Application to Retain a Realtor; Motion for Relief from Stay; and Confirmation of the Joint Proposed Chapter 12 First Modified Plan of Liquidation[1] filed by the Debtor and the Chapter 12 Trustee ["Plan"]. Vermont Highland Cattle Company ["VHCC"] filed objections to all three matters. The matters are in some ways inextricable, since the parties have all professed a desire that the

---

[1] Doc 136

property be sold. The court overruled VHCC's objection to retention of the realtor and granted that application. The court reserved decision on the stay motion and confirmation.

Both remaining matters hinge on the value of the Debtor's property, which is in dispute. The parties all agree that the case cannot sustain a full evidentiary hearing on valuation. Of course, the best way to determine if there is value here for VHCC or for other creditors is to expose the property to the market. The Plan proposes to do so. The problem is that before the plan can be confirmed and effectuated, this court is obligated to make at least a preliminary finding regarding the value of the property to decide both VHCC's Motion for Relief from Stay and confirmability of the Plan.

Section 362(d) provides that a party is entitled to relief from the automatic stay for cause, including a lack of adequate protection. The parties agree that the Debtor has been paying VHCC $4,500 a month as adequate protection. VHCC argues that the monthly payment is not sufficient because the payments only go to interest and the value of the property is not enough to pay its claim in full when the additional interest, fees, and costs are added on. Notably, VHCC does not argue or present evidence that the value of the property is declining, only that VHCC's claim is accruing more rapidly than the monthly payment. The rate of accrual of VHCC's claim is disputed. The numbers that VHCC presented at oral argument regarding the amount of additional fees and costs are not the same as the numbers that were used in the written submissions. Also, the Debtor suggested that the legal fees may be objected to on the grounds of reasonableness. The court does not need to determine the amount of fees or their reasonableness today, because if the court assumes that the full amount of $137,000 in fees and costs will be allowed, it still can find that VHCC is adequately protected in the short run while the property is marketed as contemplated by the Plan.

As the court stated at a prior hearing, it agrees with the parties that this case should not bear the additional legal fees of a full evidentiary hearing to determine the value of the property. More significantly, given the substantial motion practice in this case, taking testimony regarding valuation will not meaningfully augment the court's understanding of the value of this property. The court has three pieces of evidence regarding valuation: 1) Debtor's Comparative Market Analysis - which it must be noted does not take into account the sale of the development rights – which suggested a listing price of $1,029,142; 2) an appraisal by VHCC which suggested a value of $650,000; and 3) the listing price of $849,000 suggested by Jim Campbell Real Estate. In this court's experience, a listing price is more indicative of fair market value than appraisals or CMAs because it takes into account the realtor's knowledge of up-to-the minute real estate trends in a given area. That being said, a listing price can also be a negotiating tactic and represents a starting point rather than an end point. The ultimate sale price might be higher or lower, but generally it is within range of the initial asking price. VHCC's counsel acknowledged as much at oral argument. After considering the appraisals and the listing price, the court concludes that the likeliest value for the property is $849,000. At that valuation, there is enough equity to pay VHCC's claim in full even after the costs of sale and amounts owed to the Town of Lowell for taxes. That, coupled with the adequate protection payments of $4,500, are sufficient to provide VHCC with adequate protection for the period proposed in the Plan, so the court will deny the stay motion. But, as an additional layer of adequate protection, because this Debtor has been given more than ample time to propose and confirm a plan, the court will enter an order now that

grants stay relief in the event the trustee does not have a written offer within the time contemplated by the Plan as confirmed by the court below.

Moving on to confirmation, section 1225 provides that the court shall confirm a Chapter 12 plan if all seven subsections are 1225(a) satisfied. Section 1225(a)(1) requires that "the plan complies with the provisions of this chapter and with the other applicable provisions of this title." The court finds that this Plan complies with the provisions of Chapter 12 and with title 11 in general because the plan places claims that are substantially similar in nature in the same class and provides for the same treatment for each claim in a particular class. There is no indication that the classes have been manipulated in a manner inconsistent with the purposes underlying the Code. Here, lack of class manipulation is particularly ensured because the Plan was a joint effort between the Ch 12 trustee and the debtor and their counsel.

Section 1225(a)(2) requires that "any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid." That issue was not raised at the hearing, but the court is making that a condition of confirmation and will put it in the order confirming the Plan.

Section 1225(a)(3) requires that "the plan has been proposed in good faith and not by any means forbidden by law." In interpreting an identical provision in Chapter 11, the Third Circuit has stated that "[f]or purposes of determining good faith under Section 1129(a)(3), the important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code."[2] The court finds that the liquidation plan that is proposed in this case is consistent with the policies and purposes of the Code. As stated by Debtor's counsel at oral argument, a liquidating plan is something that is specifically contemplated in Chapter 12. Section 1223(b)(8) states that a plan may "provide for the sale of all or any part of the estate …." The court finds that the Plan has been proposed in good faith because its purpose is to attempt to salvage value that would otherwise be lost in a foreclosure sale to provide a return for unsecured creditors. Although VHCC expresses skepticism that there will be any value left to pay unsecured creditors, the only way to ascertain that for certain is to expose the property to the market.

As part of the finding that this Plan was proposed in good faith the court must address some of the specific objections to confirmation raised by VHCC. The first is that although some parts of the Plan state that the tax liens and VHCC will be paid in full other parts refer to paying the amounts in the proofs of claim. The court sustains VHCC's objection on this point. The order confirming the Plan must make explicit that the those secured claims must be paid in full including any interest (at the statutory rate) up to the date of the sale of the property and any fees and costs. To the extent that there is a dispute as to the amount owed those sums must be held in escrow pending determination by this court.

The next objection is to Paragraph I. E. (4), which provides, "If the Chapter 12 Trustee does not have a duly executed contract for sale of the real property within 90 days of the Effective Date, then VHC may file a Certification of Default with the Court, on notice to the

---

[2] *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 247 (3d Cir. 2005)

3

Trustee and all creditors, requesting entry of an Order granting relief from the automatic stay." VHCC wants that shortened to 90 days from when the property is placed on the market. The effective date is anticipated to be 21 days after entry of the confirmation order which would be approximately 120 days from now. The court approved a realtor and the proffer on the record was that the realtor was ready to place the property on the MLS immediately. The court does not want to overly hamstring the trustee and her realtor in trying to effectuate a sale but also wants to address VHCC's legitimate concerns given that the equity cushion is so small. Accordingly, as previously mentioned, the court will enter an order now that grants VHCC stay relief if there is no executed contract for sale within 120 days from today. Changing the Plan terms slightly to provide a date certain for stay relief will inject a needed degree of certainty into these proceedings. It will also avoid placing the onus on VHCC to file a certification of default.

Finally, the objection about the sale of the farm crops is overruled. The Chapter 12 trustee can address the crops as part of her business judgment in closing on any potential sale.

Section 1225(a)(4) provides that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date." This is commonly known as the best interest of creditors test and the court finds it is satisfied based on the Liquidation Analysis provided as Exhibit A. The Liquidation Analysis optimistically asserts that the Plan should result in 100% payment of all creditors. That remains to be seen, but the best interest of creditors test is still satisfied because the Plan will not provide less than any creditor would receive in a Chapter 7.

The biggest hurdle for confirmation of this Plan is section 1225(a)(5) which provides that "with respect to each allowed secured claim provided for by the plan
  (A) the holder of such claim has accepted the plan;
  (B) (i) the plan provides that the holder of such claim retain the lien securing such claim;
      (ii) the value, as of the effective date of the plan, of property to be distributed by the trustee or the debtor under the plan on account of such claim is not less than the allowed amount of such claim; or
  (C) debtor surrenders the property securing such claim to such holder."
VHCC has not accepted the Plan and the Plan does not propose to surrender the property. So, to confirm the court must find that 1225(a)(5)(B) is satisfied. The Plan provides that VHCC will retain its lien so subpart (i) is satisfied. But, the court must also find that the value of what will be distributed - which here is the proceeds of the sale - is not less than the allowed amount of VHCC's claim. As the court has already stated, it is adopting the listing price as the value of the property. Therefore, there is equity above the objecting creditor's claim and that is sufficient to satisfy 1225(a)(5)(B)(ii).

Next, section 1225(a)(6) requires that "the debtor will be able to make all payments under the plan and to comply with the plan." This is known as feasibility and courts have frequently noted that the standards for determining plan feasibility are not rigorous.[3] Since this is a liquidation plan, that finding is even easier. The Plan proposes that VHCC will continue to be paid $4,500.00 per month until the closing on sale of the property. The court finds those future

---

[3] *See, e.g., In re Machne Menachem, Inc.*, 371 B.R. 63, 71 (Bankr. M.D. Pa. 2006)

4

payments to be feasible based on the history of the case since the payments have consistently been made as ordered. The Plan has a built-in deadline for the sale of the property, so feasibility is not undermined by a proposed sale with no deadline

    Finally, section 1225(a)(7) requires that the debtor has paid all amounts that are required to be paid under a domestic support obligation and that first become payable after the date of the filing of the petition if the debtor is required by a judicial or administrative order, or by statute, to pay such domestic support obligation." This issue was not raised, and the court assumes it is not applicable but will make payment of any such amounts a condition of confirmation.

    The court finds that all of the sections of 1225 are satisfied and will confirm the Plan. Debtor's counsel should submit a confirmation order, on notice to VHCC's counsel, in conformance with this ruling. VHCC's counsel should submit an order on the motion for relief from stay which grants stay relief 120 days from the date of this opinion if there is no signed contract for sale.

                                      */s/ Kathryn C. Ferguson*
                                      KATHRYN C. FERGUSON
                                      US Bankruptcy Judge